UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

| | |
|---|---|
| WILLIAM J.R. EMBREY, ) | |
| ) | |
| Petitioner, ) | Action No. 0:15-CV-45-HRW |
| ) | |
| v. ) | |
| ) | |
| JODICE L. SNYDER NORRIS, Warden, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Respondent. ) | |

\*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*

Petitioner William J. R. Embrey is an inmate confined by the Bureau of Prisons ("BOP") at the Federal Correctional Institution located in Ashland, Kentucky. Embrey has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 [D. E. No. 1], in which he contends that the BOP improperly refuses to credit one his federal sentences with 508 days of jail-time credit.

On November 24, 2015, the Court entered an Order [D. E. No. 5] directing Respondent Jodie L. Snyder-Norris, Warden of FCI-Ashland, to respond to Embrey's § 2241 petition. On January 26, 2016, Warden Snyder-Norris filed her "Response in Opposition to Petition" ("Response") *see* D. E. No. 7, in which she attached various sentence computation documents generated by the BOP; copies of documents filed in various federal court proceedings; and the sworn Declarations of Declaration of Grace Woods-Coleman [D. E. No. 7-1], Management Analyst at the BOP's Designation and Sentence Computation Center ("DSCC") in Grand Praire, Texas, and Joshua Billings, Senior Attorney for the BOP at the Consolidated Legal Center in

1

Lexington, Kentucky. [D. E. No. 7-9] On February 11, 2016, Embrey filed "Objections" [D. E. No. 8] to Snyder-Norris's Response. The case is ripe for disposition.

As explained below, the Court determines that Embrey failed to exhaust his claims before filing this § 2241 proceeding in July 2015, and that this proceeding will be dismissed as prematurely filed.

## BACKGROUND

Embrey has been convicted three times in federal court. See D. E. No. 5, pp. 2-3 (discussing Embrey's three federal convictions). See In his § 2241 petition, Embrey alleged that the BOP improperly refuses to credit his most recent federal sentence (imposed in April 2000), which is for a term of 262 months, with 508 days (approximately 17 months) of pre-sentence time which Embrey claims that he spent in detention, between December 5, 1998, and April 24, 2000. Embrey alleges that during this time-period, he was held in the custody of the U.S. Marshals while that criminal proceeding was pending in the United States District Court for the Western District of Missouri.

In her Response, Snyder-Norris first argues that Embrey's § 2241 petition should be dismissed because Embrey failed to fully and properly exhaust his administrative remedies **prior** to filing his petition on July 10, 2015. Snyder-Norris relies on the Declaration filed by Senior BOP Attorney Joshua Billings, who states that on April 8, 2015, Embrey submitted a Request for Administrative Remedy ("BP-9") to Snyder-Norris, in her capacity as the Warden of FCI-Ashland, seeking jail credit for the period of time between December 5, 1998, and April 24, 2000. [Billings Dec., D.E. No. 7-9, p. 1, ¶ 3; see also D. E. No. 7-11, pp. 1-2].

2

On April 28, 2015, Snyder-Norris denied Embrey's request for administrative remedy, explaining that in August 1997, Embrey had been released from federal custody on the 1980 Sentence via appeal bond and that upon his arrest, the 1980 Sentence again commenced running on December 5, 1998. [*Id.*; *see* D.E. No. 7-11, p. 3] Snyder-Norris also informed Embrey that 18 U.S.C. § 3585(b) prohibited awarding prior custody credit for time spent in official detention when that time is credited against another sentence. [*Id.*] Snyder-Norris advised Embrey that he could file an appeal with the Regional Director within 20 days of the date of her response. [*Id.*]

On May 18, 2015, the Regional Director of the BOP's Mid-Atlantic Regional Office ("MARO"), received Embrey's Administrative Remedy Appeal ("BP-10"), in which Embrey challenged Warden Snyder-Norris's denial of his request for jail credit. [Billings Dec., D. E. No. 7-9, p. 2, ¶ 4; *see also* D. E. No. 7-11, pp. 4-6]. On June 12, 2015, J. F. Carraway, the MARO Regional Director denied Embrey's BP-10 appeal, explaining that the BOP had computed Embrey's sentence according to applicable sentencing statutes and regulations, and provided Embrey with a detailed account of his computation. [D. E. No. 7-9, p. 2, ¶ 4; D.E. No. 7-11, p. 6] Carraway advised Embrey that he could appeal to the Office of General Counsel within 30 days (of June 12, 2015). [*Id.*] Embrey filed his § 2241 petition in this Court on July 10, 2015. [D. E. No. 1].

According to Billings's Declaration, Embrey did not submit his Administrative Remedy Appeal ("BP-11") to the BOP's Office of General Counsel until August 24, 2015. [Billings Dec. D. E. No. 7-9, p. 2, ¶ 5; D. E. No. 7-11, pp. 7-8]. Snyder-Norris thus contends that because the Office of General Counsel did not receive Embrey's BP-11 appeal until August 24, 2015, the

BP-11 appeal (of the Regional Director's June 12, 2015, denial of Embrey's BP-10 appeal) Embrey prematurely filed this § 2241 proceeding on July 10, 2015.

Embrey, on the other hand, contends that he submitted his BP-11 appeal to the Office of the General Counsel in a timely fashion, and that it was received by the Office of General Counsel on June 29, 2015. Embrey states that he began the administrative remedy process in March 2015, and completed it on June 29, 2015, "…when the BOP General Counsel in Washington D.C. received Petitioner's BP-11." [D. E. No. 8, p. 5] Embrey contends that BOP General Counsel's office had 40 days in which to respond to his BP-11, resulting in a response deadline of approximately August 5, 2015, but that "… the General Counsel refused to meet that deadline," and that "…in approximately August 5, 2015, petitioner's BOP-11 administrative remedy was exhausted." [*Id.*] Embrey reiterates that because the BOP General Counsel failed to respond to his BP-11 appeal within 40 days of June 29, 2015, "… the BOP General Counsel rendered the administrative remedy unavailable to Petitioner." [*Id.*, p. 6]

Billings's attached to his Declaration a copy of Embrey's BP-11 appeal to the Office of General Counsel, which Embrey dated June 20, 2015. *See* D. E. No. 7-11, pp. 7-8. That document contains two different "Received" Stamps; one "Received" stamp states that Embrey's BP-11 appeal (to the BOP's Central Office) was "received" by the "Administrative Remedy Section" on "Jun 29 2015," while the other "Received" stamp states that Embrey's BP-11 appeal was "Received" by the "Administrative Remedy Section" on "Aug 24 2015." *See id.*, p. 7. Each of the two "Received" stamps have different style, font, and format, but each refer to the "Administrative Remedy Section." [*Id.*] On October 5, 2015, the Office of General Counsel denied Embrey's BP-11 appeal. [Billings's Dec., D.E. No. 7-9, p. 2, ¶ 5; D. E. No. 7-11, pp. 9-

4

10] In that response, the Office of General Counsel provided Embrey with a detailed computation of his federal sentence, and the supporting statutory and regulatory authority for same.

Respondent Snyder-Norris's second argument is that habeas relief is not warranted on the merits, because the BOP has properly calculated the 262-month sentence which Embrey is currently serving, and has already applied the proper amount of jail credit to that sentence in compliance with the applicable federal statute and BOP policy. Relying upon the sworn Declaration of Grace Woods-Coleman [D. E. No. 7-1], Management Analyst at the BOP's DSCC, Snyder-Norris provides the following chronological summary of Embrey's several federal sentences, and an explanation of how the BOP has computed the federal sentence which Embrey is currently serving.

On September 19, 1980, a Missouri federal court sentenced Embrey to an aggregate 40-year prison term for armed bank robbery and kidnapping. *United States v. William J. R. Embrey*, No. 3:80-cn-05011-ODS-2(W.D. Mo.) ("the 1980 Sentence"); Woods-Coleman Dec., D. E. No. 7-1, p. 2, ¶ 4. The BOP determined that Embrey began serving the 1980 Sentence on September 19, 1980. [*Id.*]

On August 14, 1997, Embrey was serving the 1980 Sentence, but on that date, the federal court in North Dakota approved his release from BOP custody pursuant to an appeal bond. [*Id.*, ¶ 5; *see also*, *Embrey v. United States*, No. 3:97-mc-18-RSW (N.D. 1997) [D. E. No. 4, therein] On August 15, 1997, the BOP placed Embrey's sentence computation into "inoperative" time. [Woods-Coleman Dec., D. E. No. 7-1, p. 2, ¶ 5] On December 17, 1997, the Eighth Circuit Court of Appeals affirmed the 1980 Sentence, *see Embrey v. Hershberger*, 131 F.3d 739 (8th

5

Cir. 1997) (*en banc*), *cert. denied*, 525 U.S. 828 (1998); however, Embrey remained free on bond. [Woods-Coleman Dec., D. E. No. 7-1, p. 2, ¶ 4]

Almost a year later, on December 2, 1998, the federal court in North Dakota granted a motion to revoke Embrey's bond. [*Id.*, ¶ 6; *see also, Embrey v. United States*, No. 3:98-CV-9-RSW-KKK (N.D. 1998) [D. E. No. 17, therein] On December 5, 1998, state authorities in Missouri arrested Embrey in Greene County, Missouri. [Woods-Coleman Dec., D. E. No. 7-1, p. 2, ¶ 6] On December 7, 1998, the United States Marshals Service ("USMS") took custody of Embrey from state authorities, and the BOP resumed calculating the 1980 Sentence, effective December 6, 1998 [Woods-Coleman Dec., D. E. No. 7-1, p. 3, ¶ 7] Woods-Coleman states, "…the inoperative time status ceased on that date." [*Id.*]

On December 16, 1998, Embrey was charged in the Missouri federal court with being a felon in possession of a firearm in possession of a firearm (in violation of 18 U.S.C. § 922(g)) after being found in an automobile containing firearms. *United States v. Embrey*, 6:98-CR-003095 (W.D. Mo. 1998) [D. E. No. 1, therein] Embrey pleaded guilty to the § 922(g) firearm offense, and on April 24, 2000, he was sentenced to serve a 262-month prison term. [D. E. No. 156, therein] ("the Firearm Sentence")[1] The Firearm Sentence was ordered to run concurrently with any undischarged term of imprisonment to which Embrey was still subject. *See* Woods-Coleman Dec., D. E. No. 7-1, p. 3, ¶ 8.[2]

---

[1] The date upon which the Firearm Sentence was docketed in the Missouri district court was May 1, 2000, but Embrey was actually sentenced one week before, on April 24, 2000.

[2] On appeal, the Firearm Sentence was affirmed. *United States v. Embrey*, 250 F.3d 1181 (8th Cir. 2001), *cert. denied*, 538 U.S. 953 (2003) Embrey sought post-conviction relief from the Firearm Conviction but was denied relief; on appeal, the denial of relief was affirmed. *Embrey v. United States*, No. 02-2514 (8th Cir. Aug. 16, 2002).

In her Declaration, Woods-Coleman explains that the BOP treats federal sentences imposed under "old law" (which applies to a sentence imposed for an offense that occurred **prior to** November 1, 1987) differently from federal sentences imposed under the "new law" (which applies to a sentence imposed for an offense that occurred **on or after** November 1, 1987). Woods-Coleman states that pursuant to BOP Program Statement 5880.28, *Sentence Computation Manual (CCCA of 1984)*, at pp. 1-3, a sentence imposed for an offense that occurred prior to November 1, 1987, under the "old law," cannot be aggregated with a sentence imposed for an offense that occurred on or after November 1, 1987, under the "new law." [*Id.*, at ¶ 9.]

The § 922(g) felon-in-possession offense which led to the imposition of the Firearm Sentence transpired in December 1998; therefore, the Firearm Sentence was imposed under the "new law." Woods-Coleman states that in accordance with the BOP's policy which prohibits aggregating old law and new law sentences, the BOP prepared a separate sentence computation for the Firearm Sentence. [*Id.*] Citing 18 U.S.C. § 3585(a) and BOP Program Statement 5880.28, Woods-Coleman states that the *earliest* possible date on which a federal sentence can commence is the date on which it is imposed, and that accordingly, the BOP computed the Firearm Sentence as having commenced on **April 24, 2000**: the date on which the Firearm Sentence was imposed. [*Id.*, at ¶ 10]

Woods-Coleman states that the BOP did not apply prior custody credit for the period of December 7, 1998, through April 24, 2000, toward the Firearm Sentence because the BOP had previously credited the 1980 Sentence with that same period of time. [*Id.*] Woods-Coleman explains that the computation of the Firearm Sentence is consistent with 18 U.S.C. § 3585(b), which provides that an award of pre-custody credit time against a federal sentence may only be

7

made for any time spent in official detention prior to the commencement of the sentence which has not been awarded against another sentence. [*Id.*, pp. 3-5, ¶ 10]

Woods-Coleman states that Embrey was "released" from the 1980 Sentence on September 25, 2007, via mandatory release, *see id.*, at p. 4, ¶ 11, but that he was not released *from the BOP's custody* at that time because he was still serving the Firearm Sentence. [*Id.*] Woods-Coleman points to the BOP document computation document entitled "Public Information Inmate Data As of 01-06-16" (Computation 040), which reflects the earliest date of the offense was December 5, 1998, thus rendering the Firearm Sentence a "new law" sentence; that the duration of the Firearm Sentence is 262 months, and that the Firearm Sentence commenced on April 24, 2000, the date of imposition. [Public Information Inmate Data as of 01-06-16, D. E. No. 7-2, p. 8].

Woods-Coleman further points to another entry in the Public Information Inmate Data As of 01-06-16, which reveals that even though the 1980 Sentence, which was imposed under "old law" sentence, and the Firearm Sentence (of 262-months, which was imposed under the "new law") could not be aggregated, the BOP did in fact credit the Firearm Sentence with prior almost six months of jail-time credit for the time-period between March 31, 1980, and September 18, 1980. [Woods Coleman Dec., D. E. No. 7-1-, p. 4, ¶ 11] Additionally, the Public Information Inmate Data As of 01-06-16 documents that Embrey received prior custody credit for the period of time between December 5, 1998, and December 6, 1998. [*Id.*; *see also*, D. E. No. 7-2, p. 8] Woods-Coleman concludes that based on the computation of the Firearm Sentence and Embrey's good-conduct time, the Embrey's projected release date from BOP custody is **November 10, 2018**. [*Id.*]

In his "Objections," Embrey contends that paragraphs 6 and 7 of Grace Woods-Coleman's Declaration are "incorrect and misleading." [D. E. No. 8, p. 7] Embrey asserts that his arrest on December 5, 1998, had no connection to the 1980 Sentence; that the United States Parole Commission had released him from the 1980 Sentence; and that he did not come into the custody of the BOP on December 5, 1998, for purposes of the 1980 Sentence. [*Id.*, pp. 7-8]

Embrey takes the position that the 1980 Sentence was wrongly calculated and was "illegally" imposed, because it improperly required him to serve two consecutive 20-year sentences, and that the BOP's action of holding him to the consecutive provisions of the 1980 Sentence--through application of its internal sentence computations vis-a-vis the Firearm Conviction—was, and is, invalid. [*Id.* p. 9] Thus, in his § 2241 petition, Embrey now collaterally challenges the consecutive sentence provision of the 1980 Sentence, claiming that the 1980 Sentence was "illegal" and invalid, and that the BOP should not have enforced the consecutive aspect of the 1980 Sentence by applying the 508 days of credit to it.

Embrey contends that the BOP should apply the 508 days of jail credit (between December 5, 1998, and December 6, 1998) to the Firearm Sentence, **not** to the 1980 Sentence, and that by applying that 508-day period of time to the 1980 Sentence, the BOP is thus violating his constitutional rights by forcing him to serve 508 additional days in federal service. [*Id.*, p. 4; p. 9][3] Embrey asserts that during the 508-day period between December 5, 1998, and April 24,

---

[3] Embrey alleges:

> Therefore, is was [sic] unlawful for the BOP to have applied Petitioner's case No. 98-03095-01-CR-S-3 presentence detention jail time from December 5, 19998 to April 24, 2000 (approximately 508 days) to the 1980 illegal "consecutive" 20 year sentence in Case No. 80-05-11-01-CR-Sw. Pursuant to 18, U.S.C. § 3585(b) that 508 days of presentence detention Jail time, must be applied to the April 24, 2000, sentence in case No. 98-03095-1-CR-S-3."

9

2000, he was held in federal custody in the Greene County, Missouri, Jail, while his criminal proceeding was pending in the Missouri federal court [*Id.*] Embrey seeks an Order requiring the BOP to credit the Firearm Sentence with 508 days of pre-sentence jail-time credit, thus advancing his projected release date by eighteen months, to **May 10, 2017**. [*Id.*, p. 11]

## DISCUSSION

Respondent Snyder-Norris correctly asserts that Embrey's § 2241 petition should be dismissed because he filed it before he fully and completely exhausted his administrative remedies. Embrey contends that the BOP's Office of General Counsel received his BP-11 appeal on June 29, 2015, but failed to take action on the appeal until October 5, 2015, and that as a result, he was denied the opportunity to exhaust his administrative remedies. By contrast, Respondent Snyder-Norris contends that, based on the Declaration of BOP Attorney Joshua Billings, Embrey filed this § 2241 proceeding prematurely on July 10, 2015, long before he submitted his BP-11 appeal to the Office of General Counsel on August 24, 2015, (as one of the two "Received" stamps indicates in D. E. No. 7-11, p. 7), and before the administrative remedy process had concluded.

Federal prisoners must exhaust their administrative remedies before they can file a § 2241 petition, *Fazzini v. Ne. Ohio Carr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006). "Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Id.*, 473 F.3d at 231. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court explained that exhaustion of administrative remedies must be done "properly," which means

[D. E. No. 8, pp. 9-10]

going through all steps that the agency holds out, obeying all directions, and adhering to all deadlines set by the administrative rules. *Id.* at 90; *see Graham v. Snyder*, 68 F. App'x 589, 590 (6th Cir. 2003) (discussing administrative exhaustion relative to a § 2241 petition). If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. But an inmate cannot consider that his appeal has been denied based on the lack of response **until** the BOP's response time has concluded. Here, Embrey filed this § 2241 proceeding before the BOP's Office of General Counsel addressed his BP-11 appeal on the merits.

Respondent Snyder-Norris, through the Declaration of Joshua Billings, has attached computer generated documents from the BOP which track not only the dates on which Embrey filed each and every administrative remedy request and appeal, but also the dates on which those remedy requests and appeals were rejected or denied. Those filings reveal that on June 29, 2015, the Office of General Counsel received a BP-11 appeal from Embrey, which it identified as No. "815699-A1, in which Embrey requested jail-time credit. *See* "Administrative Remedy Generalized Retrieval Full Screen Format" dated January 6, 2016, filed as D. E. No. 7-10, p. 17. On July 21, 2015, the Office of General Counsel **rejected** Embrey's BP-11 appeal because he attached only two copies of his continuation page, described as "CPG RSA OTH." [*Id.*] That same document reveals that on August 24, 2015, the Office of General Counsel received another BP-11 appeal from Embrey, which it identified as No. 815699-A**2**, in which Embrey again requested jail credit; the response date was listed as "October 23, 2015." *See id.*

That same document explains that the Office of General Counsel received Embrey's initial BP-11 on June 29, 2015 (which is consistent with one of the previously noted "Received"

11

stamps), but that it **rejected** that appeal on July 21, 2015, as procedurally defective, and instructed Embrey to re-file it. *See* D. E. No. 7-10, p. 17 (re: Remedy No. 815699-**A1**). Embrey refiled his BP-11 appeal and the Office of General Counsel received his "corrected" BP-11 appeal on August 24, 2015, *see id.* (re: Remedy No. 815699-**A2**), which is consistent with the other previously noted "Received" stamp. On October 5, 2015, the Office of General Counsel denied Embrey's BP-11 appeal on the merits. *See id.*; *see* D.E. No. 7-11, pp. 9-10. It was not until that date, October 5, 2016, that the administrative remedy process (as to Embrey's current sentencing credit claims) concluded. Only after that date could Embrey have come to this Court seeking relief under § 2241.

Embrey dated his § 2241 petition "July 7, 2015," *see* D. E. No. 1, p. 13; the Clerk of the Court received and filed it on July 10, 2015. [*Id.*] Without question, Embrey filed his § 2241 petition prematurely, long before the Office of General Counsel could address the substance of Embrey's BP-11 appeal. In his "Objections," Embrey does not mention the rejection of his BP-11 on July 21, 2015; he merely alleges in broad and conclusory fashion that the Office of General Counsel failed to respond on his BP-11 appeal in a timely fashion, and thus impaired his ability to administratively exhaust his sentence-credit claims. In short, Embrey sets forth no logical or cogent reason which changes (or justifies) the fact that he prematurely filed his § 2241 petition on July 10, 2015, while the administrative remedy process was ongoing at the Office of the General Counsel.

By contrast, Respondent Snyder-Norris has provided the Court with irrefutable documentation, in the form of Joshua Billings's sworn Declaration, D.E. No. 7-9. P. 2, ¶ 5, and the BOP's computer-generated document filed at D. E. 7-10, p. 17, which conclusively establish

12

that Embrey filed this action prematurely on July 10, 2015, almost **three months** before he fully completed the BOP's administrative exhaustion process on October 5, 2015, the date on which the Office of General Counsel denied his BP-11 appeal **on the merits**. Therefore, the Court must deny Embrey's § 2241 petition as premature because he failed to exhaust his administrative remedies prior to filing in on July 10, 2015.[4]

---

[4] In the event that Embrey re-files his § 2241 petition (now that the administrative process has concluded), he is advised the documentation which the Respondent has filed of record **strongly** indicates that the BOP properly refused to credit the Firearm Sentence with the requested 508 days of jail credit. That amount of time appears to have been properly applied to the 1980 Sentence, which was properly reinstated as active when Embrey violated the terms of his parole established by the district court in North Dakota on August 14, 1997. As the Declaration of Ms. Woods-Coleman reflects, the "inoperative" time of the 1980 Sentence ceased on December 6, 1998, when the federal criminal proceeding which led to the imposition of the Federal Sentence began. As Woods-Coleman further correctly explains, an old law sentence and a new law sentence cannot be combined or "aggregated," and must be computed separately under BOP Program Statement 5880.28. Further as the Respondent also further correctly asserts, 18 U.S.C. § 3585(b) and BOP Program Statement 5880.28, *Prior Custody Time Credit*, prevent the BOP from applying credit to a federal sentence if that same credit has already been applied to another sentence. Here, the BOP credited the 1980 sentence with the time period Embrey was in custody between December 4, 1998, and April 24, 2000. Embrey was not released from the 1980 sentence until September 25, 2007, *see* D. E. No. 7-2, pp. 5-6. As the BOP's documentation reflects, the BOP credited 479 days of "inoperative" time and 172 days of jail credit time to the 1980 Sentence. Embrey's full term expiration date on the 1980 Sentence would not have been until July 22, 2021, but because of his mandatory release on September 27, 2007, the BOP determined that Embrey satisfied the 1980 Sentence on September 27, 2007.

However, Embrey had to remain in BOP custody to begin serving the Firearm Sentence, which had by that time been imposed under the "new law." The BOP thus appears to have properly determined that Embrey began serving the Firearm Sentence on the earliest possible date allowed under federal law: April 24, 2000, the date on which the Firearm Sentence was imposed. The BOP further credited the Firearm Sentence with almost **six months** of jail credit which Embrey spent in custody between March 31, 1980 and September 18, 1980 (the latter being the date on which the 1980 Sentence was imposed), and two days in December 1998. To the extent that Embrey now challenges the inherent validity of the 1980 Sentence, on the grounds that it was "illegal" because it contained two consecutive 20-years sentences--which he was required to satisfy before his mandatory release on September 25, 2007--his collateral challenge comes far too late. Embrey could and should have collaterally challenged any aspect of the 1980 Sentence (including the fact that it consisted of two consecutive 20-years sentences) in the Missouri district court where the 1980 Sentence was imposed, through a motion filed under 28 U.S.C. 2255. The time for making such a collateral challenge to the 1980 Sentence has expired

To the extent that Embrey alleges that he is 77 years old and in poor health, *see* D. E. No. 8, p. 11, he may be broadly requesting a compassionate release. The "compassionate release" provision found in 18 U.S.C. § 3582 (c)(1)(A)(i), states that "the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that -- (i) extraordinary and compelling reasons warrant such a reduction; ..." 18 U.S.C. § 3582(c)(1)(A) (emphasis added).

But only a sentencing court can allow a sentence reduction/compassionate release under 18 U.S.C. § 3582, *see* (c)(1)(A)(i), which means that if the Director of the BOP approves such relief, the process must be undertaken in the district court in Missouri where the Firearm Sentence was imposed. *See Justice v. Sepanek*, No. 12-CV-74-HRW (E.D. Ky. Mar. 11, 2013) (holding that this Court lacked jurisdiction to grant habeas relief ordering compassionate release under § 3582); *Caudill v. Hickey*, No. 12-CV-7-KKC, 2012 WL 2524234 (E.D. Ky. June 29, 2012) (holding that compassionate release must be requested in and ordered by the sentencing court); *Quaco v. Ebbert*, No. 1:CV-12-117, 2012 WL 1598136, at *2 (M. D. Pa. May 7, 2012) (finding that a § 2241 petition was not the proper vehicle for obtaining a compassionate release and because it is typically pursued in the sentencing court). Thus, a compassionate release cannot be granted in a § 2241 proceeding such as this, as a compassionate under § 3582 must be approved by the district court which imposed the sentence.

## CONCLUSION

Accordingly, for the reasons discussed above, it is hereby **ORDERED** as follows:

---

If Embrey actually under sought relief under § 2255 but was unsuccessful, he cannot collaterally challenge any aspect of the 1980 Sentence in this § 2241 proceeding.

14

1.     The 28 U.S.C. § 2241 petition for a writ of habeas corpus [D. E. No. 1] filed by Petitioner William J. R. Embrey is **DENIED**.

2.     The Court will enter an appropriate judgment; and

3.     This habeas proceeding is **DISMISSED** and **STRICKEN** from the Court's docket.

This July 12, 2016.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge